UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

LANCE C. DRISKELL,

                              Plaintiff,        CIVIL CASE NO. 04-40224

v.

GENERAL MOTORS CORPORATION, and        HONORABLE PAUL V. GADOLA
UNITED AUTO WORKERS UNION,                 U.S. DISTRICT JUDGE

                             Defendants.

_____/

**ORDER GRANTING DEFENDANT GENERAL MOTORS CORPORATION'S AND UNITED AUTO WORKERS UNION'S MOTIONS FOR SUMMARY JUDGMENT**

Before the Court are Defendant United Auto Workers Union's motion for summary judgment, filed on June 21, 2005, and Defendant General Motors Corporation's motion for summary judgment, filed on July 8, 2005. A hearing on both motions was held on December 1, 2005. For the following reasons, the Court grants both motions for summary judgment.

**I.     Background**

Plaintiff Lance Driskell is a former employee of Defendant General Motors Corporation ("GM") and member of the local United Auto Workers union, Local 735. Defendant United Auto Workers Union ("UAW International") is the international organization of the auto workers union. In September 1977, Plaintiff began full-time work at GM's Willow Run plant. Plaintiff's employment status is protected and governed by a collective bargaining agreement ("CBA") between UAW International and GM.

In 1979, Plaintiff was discharged from his employment due to his failure to report to work.

Plaintiff filed a grievance, and as a result of negotiations between GM and Local 735, Plaintiff was reinstated to his employment with partial backpay in 1982.

In 1999, Plaintiff was incarcerated for a time on drug charges, and requested a personal leave of absence from work due to his incarceration. While in prison, Plaintiff obtained a sick leave of absence following his personal leave. After being eventually released from prison, Plaintiff returned to work at GM sometime at the end of 1999 or beginning of 2000.

Because of a parole violation, Plaintiff was sentenced to nine months in jail beginning April 5, 2001. At first, Plaintiff reported that his absence from work was due to sickness. On May 1, 2001, Plaintiff received a work release from prison and went to GM to fill out his paperwork. Plaintiff reported to Laura Thurman, GM's Labor Relations Representative, and told her that his absence from work was not due to sickness but instead due to his incarceration. Since he was not sick, Plaintiff agreed to cancel his sick leave and to be placed on a personal leave of absence. The personal leave of absence was made retroactive to April 5, 2001 and expired on May 7, 2001.

On May 8, 2001, Plaintiff was released from jail so that he could go to work. Plaintiff went missing, never reached his work at GM, and was later allegedly found drunk. The next day, Plaintiff's work release was revoked and he was forced to serve the rest of his time in jail.

When Plaintiff failed to return to work on or around May 7, 2001, which was the day that his personal leave of absence expired, Ms. Thurman automatically extended Plaintiff's leave of absence by another 60 days, in compliance with GM policy. Plaintiff again failed to report to work on July 16, 2001, which was supposed to be his first day back. Three days later, on July 19, 2001, when Plaintiff had not yet reported to work, GM terminated Plaintiff's employment by letter. The

termination letter stated: "This is to notify you that you have been discharged for your inability to function as a normal employee and to maintain the employee-employer relationship. Your continued incarceration prohibits you from attending work or being available for work as expected of a normal employee."  GM Mot., Ex. H (July 8, 2005).  At the time of his termination, Plaintiff was incarcerated and learned about his termination sometime during July or August 2001.

Plaintiff was released from prison on September 9, 2001.  On September 26, 2001, Plaintiff filed a grievance through his union, Local 735.  The grievance alleged that GM failed to properly administer Plaintiff's leaves, and that Plaintiff should be reinstated.  Sometime in October 2001, Plaintiff was again incarcerated until at least February 2002.

Local 735 handled Plaintiff's grievance through the first two steps of the grievance process. On May 16, 2002, Local 735 and GM resolved Plaintiff's grievance by a settlement.  Sometime after Plaintiff had learned of the settlement informally, Local 735 formally notified Plaintiff of the decision settling his grievance in a October 2, 2003 letter, which stated that Plaintiff's "grievance was settled on the basis that there was no contractual violations found as stated in the instant grievance."  GM Mot., Ex. K (July 8, 2005).  Though Plaintiff admits that he was aware of the appeals procedure, Plaintiff did not appeal the decision settling the grievance.

Plaintiff sent a letter inquiring about his grievance to UAW International, received on March 4, 2004. In the letter, Plaintiff requested that UAW International investigate the issues related to his discharge, alleging that his representation by Local 735 had been poor and unnecessarily time-consuming.  UAW International assigned a representative, Tim Cobb, to look into the matters of Plaintiff's discharge.  Cobb spoke with those involved in Plaintiff's case and reviewed all the

3

relevant documents. After finding nothing improper about Plaintiff's discharge, Cobb notified Plaintiff in a March 22, 2004 letter that the grievance was settled "with a final and proper conclusion," and that any questions about the settlement should be referred to Plaintiff's local union leadership. UAW Int. Mot., Ex. 15 (June 21, 2005). UAW International had no other involvement in the matter.

On July 16, 2004, Plaintiff filed a complaint against GM and UAW International in state court, Genesee County Circuit Court. The complaint contained three counts: Count I, Wrongful Termination and Retaliatory Discharge; Count II, UAW Negligence; and Count III, conspiracy. On August 12, 2004, Defendants properly removed the case to federal court based on federal question jurisdiction. After the close of discovery, Defendants each filed motions for summary judgment.

## II.     Legal Standard for Summary Judgment

Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). Summary judgment is appropriate if the moving party demonstrates that there is no genuine issue of material fact regarding the existence of an essential element of the nonmoving party's case on which the nonmoving party would bear the burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Martin v. Ohio Turnpike Comm'n*, 968 F.2d 606, 608 (6th Cir. 1992).

In considering a motion for summary judgment, the Court must view the facts and draw all reasonable inferences in a light most favorable to the nonmoving party. *60 Ivy St. Corp. v.*


*Alexander*, 822 F.2d 1432, 1435 (6th Cir. 1987).  The Court is not required or permitted, however, to judge the evidence or make findings of fact.  *Id.* at 1435-36.  The moving party has the burden of showing conclusively that no genuine issue of material fact exists.  *Id.* at 1435.

A fact is "material" for purposes of summary judgment if proof of that fact would have the effect of establishing or refuting an essential element of the cause of action or a defense advanced by the parties.  *Kendall v. Hoover Co.*, 751 F.2d 171, 174 (6th Cir. 1984).  A dispute over a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  Accordingly, when a reasonable jury could not find that the nonmoving party is entitled to a verdict, there is no genuine issue for trial and summary judgment is appropriate.  *Id.*; *Feliciano v. City of Cleveland*, 988 F.2d 649, 654 (6th Cir. 1993).

Once the moving party carries the initial burden of demonstrating that there are no genuine issues of material fact in dispute, the burden shifts to the nonmoving party to present specific facts to prove that there is a genuine issue for trial.  *Anderson*, 477 U.S. at 256.  To create a genuine issue of material fact, the nonmoving party must present more than just some evidence of a disputed issue.  *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986).  As the United States Supreme Court has stated, "there is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party.  If the [nonmoving party's] evidence is merely colorable, or is not significantly probative, summary judgment may be granted."  *Anderson*, 477 U.S. at 249-50 (citations omitted); *see Celotex*, 477 U.S. at 322-23; *Matsushita*, 475 U.S. at 586-87.

Consequently, the nonmoving party must do more than raise some doubt as to the existence

5

of a fact; the nonmoving party must produce evidence that would be sufficient to require submission of the issue to the jury. *Lucas v. Leaseway Multi Transp. Serv., Inc.*, 738 F. Supp. 214, 217 (E.D. Mich. 1990) (Gadola, J.), *aff'd*, 929 F.2d 701 (6th Cir. 1991). "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Anderson*, 477 U.S. at 252; *see Cox v. Ky. Dep't of Transp.*, 53 F.3d 146, 150 (6th Cir. 1995).

## III.    Analysis

Plaintiff's claims fall under § 301 of the Labor Management Relations Act, 29 U.S.C. § 185 *et seq.* ("LMRA"). Under § 301, Plaintiffs' claims against his employer and his union are not completely separate claims, but are rather "inextricably interdependent" in a hybrid claim. *DelCostello v. Int'l Bhd. of Teamsters*, 462 U.S. 151, 164 (1983).

> Whether the employee sues both the labor union and the employer or only one of those entities, he must prove the same two facts to recover money damages: that the employer's action violated the terms of the collective-bargaining agreement and that the union breached its duty of fair representation.

*Chauffeurs, Teamsters & Helpers, Local No. 391 v. Terry*, 494 U.S. 558, 564 (1990) (citations omitted). Therefore, in order to succeed on his claims, Plaintiff must prove two elements: that GM breached the CBA, and that Plaintiff's union breached its duty of fair representation.

Plaintiff has failed to show that GM breached the terms of the CBA. Both Defendants argue that GM did not breach the CBA because under the CBA, GM has the right to discharge employees for just charge. Defendants also argue that though the CBA requires certain leaves of absence, it does not require GM to give an extended leave because of an employee's incarceration. Plaintiff had been granted both personal and sick leave whenever he properly requested such leave in the past. Upon Plaintiff's request, GM originally granted sick leave to Plaintiff for the first part of his

incarceration beginning April 5, 2001.  Later, on May 1, 2001, Plaintiff agreed to be placed on personal leave, instead of sick leave, which GM granted.  When this personal leave expired and Plaintiff did not return to work, GM extended the leave another 60 days.  When Plaintiff had still not returned at the end of the 60-day extension, GM terminated his employment on July 19, 2001.  Plaintiff was in prison until September 9, 2001.  Sometime in October 2001, Plaintiff was again incarcerated until at least February 2002.  It is clear from these facts that GM held Plaintiff's position open for a significant amount of time, even when his work leave had expired.  There is no CBA requirement for GM to continue keeping Plaintiff's job position open for several months without a leave request because of Plaintiff's incarceration.  GM had the right to terminate Plaintiff's employment when it did.

In response, Plaintiff only makes vague allegations that he was entitled to sick leave while he was incarcerated and that GM somehow delayed the mailing of the sick leave request forms to Plaintiff.  Apart from his own allegations, Plaintiff has not pointed to any evidence in the record to support these claims that he was unable to file a request for sick leave.  Plaintiff has also not come forward with any medical records or statements from his doctor showing his past medical condition and his entitlement to sick leave.  Discovery in this case is closed, and there is insufficient evidence from which a jury could reasonably find for Plaintiff.  Because Plaintiff cannot show that GM violated the terms of the CBA, Plaintiff has failed to show one of the two necessary elements for claims under the LMRA.

Plaintiff has also failed to show that Local 723 or UAW International breached the duty of fair representation. "A breach of the statutory duty of fair representation occurs only when a union's conduct toward a member of the collective bargaining unit is arbitrary, discriminatory, or in bad

faith." *Vaca v. Sipes*, 386 U.S. 171, 190 (1967). This occurs when the union's behavior is "so far outside of a 'wide range of reasonableness' that it is wholly irrational or arbitrary." *Air Line Pilots Assoc. v. O'Neill*, 499 U.S. 65, 78 (1991) (quoting *Ford Motor Co. v. Huffman*, 345 U.S. 330, 338 (1953)). Plaintiff provides no real evidence that either Local 735 or UAW International acted in a manner that was wholly irrational or arbitrary. Plaintiff again makes vague allegations that he was told by Local 735 officials that his grievance was lost or withdrawn, or that Plaintiff's calls were not answered. These allegations, however, are unsupported by any evidence in the record. Instead, the evidentiary record shows that Local 735 considered Plaintiff's grievance, investigated the case, and negotiated the case with GM. After coming to the determination that GM had not violated the CBA, Local 735 made a decision to settle the grievance with GM. There is insufficient evidence for a reasonable jury to find that Local 735 acted in a wholly irrational or arbitrary manner.

Likewise for UAW International, there is simply no evidence in the record that they acted in a wholly irrational or arbitrary manner. UAW International's only involvement in the case is when Plaintiff contacted UAW International by the letter received March 4, 2004. UAW International promptly looked into Plaintiff's request and mailed Plaintiff a response within 18 days. It is not possible for a reasonable jury to find that UAW acted in an irrational or arbitrary fashion. Plaintiff has therefore failed to show the second necessary element for claims under the LMRA.

In addition to the previous arguments, the Court also finds that Plaintiff's suit is time-barred. The statute of limitations for suits under the LMRA is six months. *See Badon v. General Motors Corp.*, 679 F.2d 93, 99 (6th Cir. 1982). It is undisputed that Plaintiff learned about his grievance settlement by means of the October 2, 2003 letter sent by Local 735, and that over nine months later, Plaintiff filed suit in state court on July 16, 2004. The Court finds that the statute of limitation did

not begin only after Plaintiff received UAW International's March 22 letter. Since the six-month statute of limitations began to run from the time that Plaintiff learned of the settlement on October 2, 2003 and had already expired before Plaintiff filed suit on July 16, 2004, the Court finds that Plaintiff's suit is time-barred.

The Court also finds that Plaintiff's suit is barred because Plaintiff failed to exhaust all the administrative remedies available to him. "[E]xhaustion of grievance procedures is mandatory, unless resort to union appeal procedures is demonstrated to be futile." *Ryan v. General Motors Corp.*, 929 F.2d 1105, 1110 (6th Cir. 1989). "Factors specified as 'relevant' in deciding whether exhaustion should be required are hostility on the part of union officials, whether such appeals procedures would be adequate either to 'reactivate' the grievance or to award the 'full relief' sought, and the delay that would occur if the procedures were followed." *Monroe v. International Union, UAW*, 723 F.2d 22, 24-25 (6th Cir. 1983) (citing *Clayton v. International Union, UAW*, 451 U.S. 679, 689 (1981)).

In his response, Plaintiff concedes that he was aware of the various appeals procedures and administrative remedies available to him, but that he did nothing to exhaust these procedures. Plaintiff argues, however, that he is excused because his attempts to exhaust the remedies would have been futile. In support, Plaintiff again makes vague allegations that Local 735 officials failed to answer his questions or claimed that they had lost Plaintiff's file. Plaintiff points to no evidence in the record to support these allegations. Furthermore, even if the allegations are true, the Court finds that it is insufficient to demonstrate that exhaustion of the administrative remedies would have been futile for Plaintiff. Therefore, Plaintiff's suit is also barred because of his failure to exhaust his available administrative remedies.

**IV. Conclusion**

**ACCORDINGLY, IT IS HEREBY ORDERED** that Defendant UAW International's and Defendant GM's motions for summary judgment [docket entries 18 and 20] are **GRANTED.**

**IT IS FURTHER ORDERED** that this action, Civil Case No. 04-40224, is **DISMISSED WITH PREJUDICE**.

**SO ORDERED.**

Dated:  December 20, 2005         s/Paul V. Gadola
                                  HONORABLE PAUL V. GADOLA
                                  UNITED STATES DISTRICT JUDGE

---

Certificate of Service

I hereby certify that on  December 20, 2005 , I electronically filed the foregoing paper with the Clerk of the Court using the ECF system which will send notification of such filing to the following:    Alex L. Alexopoulos; Mark D. Filak; Lisa M. Smith                  , and I hereby certify that I have mailed by United States Postal Service the paper to the following non-ECF participants:                 Harrell Milhouse                                   .

                                  s/Ruth A. Brissaud
                                  Ruth A. Brissaud, Case Manager
                                  (810) 341-7845

10